**Jim R. WINGATE, Plaintiff,**

v.

**KERR–McGEE ROCKY MOUNTAIN CORPORATION, Successor to HS Resources, Inc., and Laurie McNamara, Defendants.**

No. 1:04–CV–513.

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 26, 2005.

Ernest William Boyd, Mehaffy & Weber, Chris Booth, Robert Keith Wade, Law

Offices of Robert K. Wade, Beaumont, TX, for Plaintiff.

Ken Edward Kendrick, Kelly Sutter & Kendrick, Houston, TX, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

CLARK, District Judge.

Plaintiff asserted causes of action under Texas law in this oil and gas lease case, and Defendants removed, claiming that the only nondiverse defendant, McNamara, was fraudulently joined. There is no reasonable basis to predict that Plaintiff might be able to recover on any of his claims against McNamara in state court. While the same may be said for some of the claims against the diverse defendants, there is no common defense that would bar all claims against all of the defendants. Accordingly, Plaintiff's Motion to Remand is denied.

## I. BACKGROUND

This case arises from the alleged damages suffered by Plaintiff Jim R. Wingate ("Wingate") as the result of a 1998 land lease Wingate signed with Interstate Oil Company[1]. Wingate and HS Resources, Inc. ("HSR") have already litigated most of the issues in this suit in an earlier federal suit. Federal District Judge Howell Cobb upheld the validity of the lease on December 11, 2001 and the Fifth Circuit affirmed, holding that HSR did not act in bad faith when it pooled the gas output of the leased land. *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 443 (5th Cir.2003).

The case was remanded in part, for a determination of the issues of attorneys' fees and whether HSR had waived its right to recover lease payments made under protest. The case was then transferred to this court. On December 28, 2004, after a jury trial, this court entered judgment on the verdict in favor of HSR, awarding HSR $1,479,580.00 plus attorney's fees. *See* C.A. 1:01–CV–221.

On July 15, 2004, Wingate filed a new suit in a Texas state court, alleging causes of action under the same lease for breach of duties of good faith pooling and good faith and fair dealing against HSR's successor in interest, Kerr–McGee Rocky Mountain Corp. ("Kerr–McGee"). Wingate also alleged negligence by Kerr–McGee and Defendant Laurie McNamara ("McNamara") and fraudulent inducement by McNamara alone.

Defendants timely removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, claiming that McNamara (a Texas resident) had been improperly joined. In response, Wingate filed an objection to Defendants' removal, a motion to remand, and a plea to this Court's jurisdiction

## II. LAW & DISCUSSION

### A. Standard for Remand

 A party alleging improper joinder bears a "heavy" burden of persuasion. *See Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir.2000). To prove improper joinder, defendants must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003). All issues of material fact and ambiguities of law are resolved in favor of the nonremoving party. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999).

There is no dispute that McNamara and Wingate are both Texas residents and thus

---

[1]. Interstate Oil Company and its successor in interest HS Resources, Inc. are both prede- cessors in interest to Defendant, Kerr–McGee Rocky Mountain Corp.

non-diverse. While Defendants claim that there is outright fraud in Wingate's pleading, their argument is a merit-based attack on the allegations asserted against McNamara, not a fraudulent pleading argument. The Court must therefore consider whether Wingate has a reasonable basis for recovery against the nondiverse Defendants. *See Travis,* 326 F.3d at 647–49 (5th Cir. 2003). The Court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Ctrl. R.R. Co.,* 385 F.3d 568, 573 (5th Cir.2004)(en banc).

■■■■ Generally, the existence of diversity jurisdiction is determined from the record at the time the notice of removal is filed. *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir.1995). There must be a reasonable basis for predicting that Wingate might be able to establish McNamara's "liability *on the pleaded claims* in state court." *Griggs,* 181 F.3d at 699 (emphasis added). Improper joinder occurs where a plaintiff has failed to plead under state law "any specific actionable conduct" against the nondiverse defendant. *See Id.* A court has the discretion to utilize a "summary judgment-like procedure" to review improper joinder claims, *Id.* at 700. Here, the central question is whether Plaintiff has pled a cause of action against Defendant McNamara that has a reasonable probability of being sustained in state court under either a negligence theory or fraudulent inducement theory.

## B. Wingate Fails to State Viable Cause of Action Against McNamara

### 1. Wingate's Negligence Claims Are Obviously Time–Barred

A cause of action for negligence accrues at the time of the injury and must be brought within two years of the injury. Tex. Civ. Prac. & Rem.Code § 16.003. On March 30, 2000, Wingate filed a state court complaint against HSR containing substantially similar facts and a generic allegation of negligence identical to the complaint now before this Court.[2] That suit was voluntarily dismissed on January 2, 2001, whereupon HSR filed the suit in federal court referenced earlier. Forty-one months later, Wingate filed his current suit. Wingate's pleading references no actions on any defendant's part that could give rise to a negligence cause of action separate from the claim raised in 2000. Even if the limitations period on the negligence claim was tolled during the pendency of that suit, Wingate's negligence claim against Kerr–McGee is time-barred.

It is not clear that Wingate actually intended to plead that McNamara was negligent. In fact, were it not for the use of the plural noun "Defendants," there would be no reason to think that Wingate was asserting a negligence claim against her. Additionally, even giving Wingate's pleading of the facts and claims involving McNamara a liberal and broad reading, McNamara's liability, if any, would stem only from her actions on behalf of Kerr–McGee. Since the negligence claim against Kerr–McGee is time-barred, the negligence claim against McNamara is time-barred as well. The "mere theoretical possibility" that Wingate might have

2. The certified copy of the state court complaint is dated March 30, 2000, but the Fifth Circuit says that Wingate's first state court complaint was filed on "May 4, 2000," *HS Resources, Inc. v. Wingate,* 327 F.3d 432, 437 (5th Cir.2003). In either case, the date is before July 15, 2000 and the result of any choice between the two not outcome-determinative.

some hope of recovery is not enough to preclude a finding of improper joinder. *Smallwood,* 385 F.3d at 573.

### 2. Wingate's Fraudulent Inducement Claim is Also Time–Barred

■ Under Texas law, a claim for fraudulent inducement must be brought within four years of the accrual of the cause of action. Tex. Civ. Prac. & Rem.Code § 16.004. Normally, a cause of action accrues when a victim is injured, but the "discovery rule" tolls the running of the statute of limitations on fraud claims until the victim is "aware of facts as would cause the ordinarily intelligent and prudent man to investigate." *Bush v. Stone,* 500 S.W.2d 885, 889 (Tex.Civ.App.-Corpus Christi 1973, writ ref'd n.r.e.). It is "a very limited exception to statutes of limitations." *Comp. Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex.1996).

■ The discovery rule tolls the statute of limitations only until a plaintiff learns of a wrongful injury, or of facts that should lead to an investigation. Once a plaintiff has that knowledge, "the limitations clock is running, even if the claimant does not yet know: the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *PPG Indus. v. JMB/Houston Ctr. Partners Ltd.,* 146 S.W.3d 79, 93–94 (Tex.2004) (applying the discovery rule in a UCC warranty context)(internal citations omitted). Even when the discovery rule is applied, the cause of action accrues when the fact of injury is known, not when the responsible parties are known. *Mellon Serv. Co. v. Touche Ross & Co.,* 17 S.W.3d 432, 436 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 357 (Tex. 1990)).

Wingate alleges that he was fraudulently induced into signing the 1998 lease and that he did not discover his injury until the Fifth Circuit affirmed the validity of the pooling provision in 2003. Alternatively, Wingate claims that he did not learn of his injury until Judge Cobb's summary judgment upholding the pooling provision on December 11, 2001. *Id.* If the Court were to believe this claim, that judgment apparently struck Wingate as a bolt from the blue, suddenly alerting him to the previously undreamt-of possibility that HSR's actions of the past two years might have been injurious.

■ To the contrary, Wingate had ample reason to know of any alleged injury more than four years before filing his complaint in this suit on July 15, 2004. Even if Wingate did not know the identity of the persons supposedly masterminding the alleged fraud, any injury was certainly discoverable by the time Wingate first filed suit—March 30, 2000. The lease was signed in 1998 and the pooling declaration was made in 1999. By March 30, 2000, Wingate knew enough to file a lawsuit that raised most of the same claims he raises now and sought damages from HSR. Judge Cobb's holding and the Fifth Circuit's decision merely affirmed HSR's conduct and HSR's interpretation of the lease. Neither ruling created any new rights or obligations, nor did they inflict any new injury on Wingate. Because Wingate knew enough to file suit over HSR's conduct in March of 2000, any claim that he did not know about his injuries at the time is demonstrably false. He may or may not have known *which* individual at HSR was responsible for the alleged fraudulent inducement, but that particular information is irrelevant to the running of the statute of limitations. *PPG Indus.,* 146 S.W.3d at 93.

### C. No Common Defense Disposes of All Claims

#### 1. If a Common Defense Disposes of Plaintiff's Entire Case, Remand is Appropriate

If a diverse defendant shows that joinder of the nondiverse defendants was improper, then that defendant is entitled to be sued in a Federal court. However, a finding that Plaintiff has failed to state a potentially viable cause of action against the non-diverse defendants does not end the analysis.

> Nevertheless, when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper.

*Smallwood,* 385 F.3d at 574. Thus, a finding that all of Wingate's claims are barred would require remand, as would a finding that Wingate's claims against McNamara are not barred.

*Smallwood,* however, applies only when "*all* claims against *all* defendants" are barred by a common defense. *Rainwater v. Lamar Life Ins. Co.,* 391 F.3d 636, 638 (5th Cir.2004) (emphasis in original). If any claim against Kerr–McGee might survive the statute of limitations defense that disposes of all of Wingate's claims against McNamara, then *Smallwood's* holding does not apply. *Id.*

#### 2. Wingate's Claim for Bad Faith Pooling is Not Necessarily Barred

The statute of limitations has expired as to Wingate's claims of negligence, fraudulent inducement, and a general breach of the duty of good faith and fair dealing. Those claims all arise from HSR's initial decision to pool, and the injuries and issues involved were raised in Wingate's first state court complaint in 2000. The court therefore has no difficulty in finding that those causes of action had accrued by then. However, Wingate's claim for breach of a duty of good faith pooling (hereafter referred to as "bad faith pooling") stems from the *manner* in which HSR pooled the gas output of the leased land.

It is not clear from the pleadings that Wingate's bad faith pooling claim has been decided. In all likelihood, that claim accrued at the same time as Wingate's other claims, but the record before the Court does not indicate the specific pooling decision to which Wingate objects, nor does the record indicate when those pooling decisions were made. Wingate's complaint states that "the pooled unit [declared by instrument dated September 14, 1999] does not accurately reflect the geological structures underlying the leased lands and has been created in such a fashion as to manipulate the payments being made to the various mineral owners." Wingate's complaint does not say whether the September 1999 pooling decision was the only one to which he objects. He says only that the pooled unit as it now exists is flawed.

■ The Court cannot say with certainty—at this time and based on the record before it—that all of Wingate's bad faith pooling claims arose more than two years before he filed his complaint in this case. Wingate's bad faith pooling claim could be valid to the extent that it incorporates events that took place after July 15, 2002. Whether there are any such events, and what they might be, requires a factual inquiry unsuitable for a court considering a motion to remand. *See Smallwood,* 385 F.3d at 573. While there is no reasonable

basis to predict that Wingate might recover against McNamara, there is a possibility that recovery might be had against Kerr–McGee. Therefore, *Smallwood* does not require remand, and Plaintiff's motion will be denied.

Given the procedural history of this case, involving prior suits in state and federal courts, a summary judgment, an appellate decision, and a jury trial, there are strong policy reasons for declining any invitation to reach a strained interpretation of the facts as pled, or of *Smallwood*, in order to justify remanding the case. Wingate's present suit constitutes an attempt at an end-run around the lengthy litigation just completed in federal court. He has had his day in court—actually, by the court's count, more than 1270 days.

Federal courts have already upheld the validity of the lease and HSR/Kerr–McGee's decision to pool. Although the defendants are nominally different, Kerr–McGee is involved only as a successor to HSR, and McNamara's alleged liability is based entirely on her actions on HSR's behalf. The claims and issues involving the initial pooling decision are thus effectively identical and the parties are in privity. Wingate's claim for a breach of duty of good faith and fair dealing against Kerr–McGee was decided when the Fifth Circuit held that HSR had authority under the Lease to pool and rejected the argument that the HSR–Wingate Unit was formed in bad faith. *Wingate*, 327 F.3d at 442–43. In discussing the actual pooling unit, the Fifth Circuit held that "there is no genuine issue of material fact on the question of bad faith." 327 F.3d at 443.

These considerations do not determine jurisdiction. However, notions of judicial economy, and protecting the judgments of federal courts weigh in favor of rejecting Wingate's patently obvious ploy of seeking a new state court interpretation of the lease. A remand would transform the judgment of the Court of Appeals, and of this court, into a mere basis for a plea of res judicata, to be examined by another court, unfamiliar with the record. True, Kerr–McGee could seek, and would probably obtain, an injunction barring relitigation of the issues decided by federal courts. *See* 22 U.S.C. § 2283. That statute was intended to "prevent the wasteful and harassing revisiting of previously decided matters." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 676 (5th Cir.2003). How is that goal advanced by straining to remand the case, and, as a sop, reminding Defendant that for "only a few more dollars" it can take advantage of the relitigation exception to the Anti–Injunction Act? A federal court should be seeking "to secure the just, speedy, and inexpensive determination of every action," not indulging in tortured analysis to justify divesting itself of jurisdiction, thus encouraging lengthy, repetitive, and expensive lawsuits. *See* Fed.R.Civ.P. 1.

It is therefore **ORDERED** that Plaintiff's Motion to Remand is **DENIED**.